Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4312 | **DATE** | 11/20/2003 |
| **CASE TITLE** | Sartor vs. Spherion | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is granted with regard to Counts I and II. Counts III - V are dismissed without prejudice. Defendant's motion to strike is denied as moot. Status hearing set for 11/25/03 is stricken. Any other pending dates are stricken.

*/s/ Amy J. St. E.*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 2 1 2003 | |
| | Notified counsel by telephone. | date docketed | 46 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAROLYN D. SARTOR, | ) |
| Plaintiff, | ) |
| | ) No. 02 C 4312 |
| v. | ) |
| | ) |
| SPHERION CORPORATION, a Delaware corporation, | ) |
| | ) |
| Defendant. | ) |

DOCKETED
NOV 2 1 2003

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

Plaintiff Carolyn Sartor, an African-American female, filed suit against Spherion following her termination, alleging race and gender discrimination and claiming severance payment. Defendant has moved for summary judgment on all of Plaintiff's claims. For the reasons stated herein, Defendant's motion is granted with respect to Counts I and II. Defendant's motion to strike is denied as moot. Counts III-V are dismissed for lack of subject matter jurisdiction.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the evidence presented to the Court shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742 (7th Cir. 2003); Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). The party seeking summary judgment has the burden

of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

Once the movant has met this burden, it is up to the non-movant to present "definite, competent evidence to rebut the motion" and show that there is an issue of material fact. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). A mere scintilla of evidence in support of the non-movant's position is insufficient. *See Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512. The Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## FACTS

In early 2000, Defendant Spherion Corporation ("Spherion") provided business solution consulting and staffing services through three main practice groups: Software Quality Management ("SQM"), Enterprise Application Integration ("EAI"), and Information Design Services ("IDS"). (R. 22-1, Def.'s Statement of Facts ¶ 5.) Additionally, a four or five-person practice group provided assistance to Spherion's health care clients in connection with the Health Insurance Portability and Accountability Act. This group was known as "HIPAA" within Spherion. (R. 28-2, Pl.'s Statement of Facts ¶¶ 10-11.)

In March 2000 Spherion hired Plaintiff to serve as practice director of the Oak Brook branch of the IDS practice group, which was expanding to include certain web-based offerings. (R. 22-1, Def.'s Statement of Facts ¶¶ 13-15.) At the end of that year, Spherion removed the IDS practice director in Chicago, and Plaintiff assumed the additional responsibilities of the practice director for the Chicago branch of IDS. (*Id.* ¶ 17.)

In November 2001 Spherion eliminated the role of practice director in favor of a new sales-focused position, Business Development Director ("BDD"). (*Id.* ¶¶ 18-19.) After Spherion eliminated the role of practice director, it gave Plaintiff the title of BDD, under which she would "handle IDS type service." (*Id.* ¶¶ 20-21.) During this time, and for the previous six months, Spherion had discussions with Plaintiff about the declining profitability and possible elimination of the IDS practice group. (*Id.* ¶ 22.) Also during this time, Spherion reevaluated each of its branches as part of a larger business transformation plan to improve profitability. (*Id.* ¶ 24.) To facilitate this business transformation, Spherion hired David Anderson as its Chicago Area Vice President, addressing concerns that the former Chicago Area Vice President could not make the "tough business decisions" that business transformation required. (*Id.* ¶¶ 24-27.)

Anderson met with Plaintiff on or about January 9, 2002, to discuss the IDS practice and her current role as BDD "essentially marketing IDS type service."[1] (*Id.* ¶ 31.) At the end of that meeting, Anderson requested that Plaintiff provide him with "an updated forecast reflecting revenue opportunities for the year 2002." (*Id.* ¶ 32.) Anderson, at the time of this meeting, did not intend to eliminate Plaintiff's position.[2] Nevertheless, decision makers at Spherion, including Anderson, ultimately decided to eliminate IDS as a practice group because of its lack of profitability and questionable viability. (*Id.* ¶ 37.) Spherion made this decision sometime in

---

[1] Although Plaintiff asserts that her marketing role was not limited to IDS services, she does not dispute that her role was "essentially" marketing IDS type services and she does not reveal what other services she sold.

[2] Plaintiff attempts to dispute Anderson's intentions by showing that others at Spherion anticipated — at and before the time Sartor became BDD — that the IDS practice group would eventually be eliminated. (R. 28-1, Pl.'s Resp. to Def.'s Statement of Facts ¶ 33.) Nevertheless, this evidence does not call Anderson's specific intention into question.

3

the beginning of January, very close in time to Sartor's meeting with Anderson.[3] (*Id.* ¶ 34.)

As part of the business transformation, Spherion decided to eliminate EAI, IDS, and HIPAA as separate practice groups, offering portions of EAI and IDS through a new practice group: Application Development Integration ("ADI"). (*Id.* ¶ 39; R. 28-2, Pl.'s Statement of Facts ¶¶ 21-22.) It is undisputed that Spherion intended ADI to include most of the services formerly offered by EAI, and few of those offered by IDS.[4] (R. 22-1, Def.'s Statement of Facts ¶¶ 39-40.) As certain IDS-related projects were completed, Spherion moved some IDS consultants to hourly status or laid them off unless the consultants' skills permitted them to transfer into another practice group. (*Id.* ¶ 77.)

The BDD for the EAI practice group during this time was Mike Smith, a white male, whose expertise included knowledge of the WebSphere platform, which Spherion planned to offer after the business transformation. (*Id.* ¶ 45.) After the business transformation, Smith became a BDD in the new ADI practice group. (*Id.* ¶ 46.) Deb Simone, a white female, had been acting as BDD for the HIPAA practice group. (*Id.* ¶ 47.) As part of her focused role in HIPAA, Simone sold service offerings from other practice groups within Spherion, including EAI and SQM. Anderson understood that Simone "knew and understood the products and services that Spherion offered extraordinarily well."[5] (*Id.* ¶¶ 47-48.) At some time before

---

[3]Plaintiff contends that Spherion had made the corporate decision to eliminate IDS in November, 2001, but only presents evidence indicating that individual Spherion employees anticipated in November that IDS would ultimately be eliminated.

[4]Plaintiff's cited testimony and allegations about Spherion's website would be sufficient to show that not all of IDS perished, but cannot stand for the proposition that IDS and EAI survived in comparable proportions.

[5]Plaintiff attempts to create a dispute by pointing to Winwood's deposition in which he agreed that HIPAA did not resemble the other existing practice groups. This does not conflict with

4

Spherion terminated Plaintiff, Simone became BDD in the ADI practice group.

On January 21, 2002, Anderson and Sartor discussed the elimination of the IDS practice group. Sartor told Anderson that she wanted to serve as a BDD in the new ADI practice group. Anderson requested that Sartor schedule an additional meeting, to which she should bring a brief written description of the skills and competencies of each IDS consultant. (*Id.* ¶¶ 49-50.) At the time of the January 21 meeting, Anderson did not know what role Sartor would play in the restructured business. (*Id.* ¶ 51.) Plaintiff has raised an issue of fact regarding Defendant's assertion that Anderson consulted with Vanelli in connection with Sartor's future employment. Therefore, the Court must presume for this motion that Anderson and Vanelli did not discuss the matter.[6]

On January 25, 2002, Anderson renewed his request to Sartor for sales forecasts and consultant descriptions, as she had not yet provided these materials to him. He also requested another career-oriented meeting with Sartor. Sartor scheduled that meeting for January 31. (*Id.* ¶ 55-57.) Providing the consultant information on January 28 and the sales forecasts at the January 31 meeting, Plaintiff eventually provided all requested materials to Anderson. (*Id.* ¶¶ 58-59.) At this meeting, Anderson and Sartor discussed two employment positions: (1) BDD for ADI and

---

the notion that Simone had sold services from other practice groups — including those eventually offered by ADI — or with Anderson's testimony about her knowledge. Additionally, Pistula's affidavit does not contest that Simone sold across practice groups as BDD of HIPAA. Nor does she assert that Plaintiff had specific experience in selling EAI lines.

[6]Sartor's affidavit is sufficient to support her claim that Vanelli told her that Anderson did not consult him. Vanelli's alleged statement is an admission, and concerns a matter within his scope of employment, namely assisting in the evaluation of Carolyn Sartor. Defendant may not simultaneously claim that such assistance was beyond the scope of Vanelli's employment and that Anderson consulted with him about Sartor's employment.

(2) branch delivery director. (*Id.* ¶ 62.) The salary for the position of delivery director was comparable to that of BDD. (R. 28-2, Pl.'s Statement of Facts ¶ 56.) Although Anderson testified that he did not give Plaintiff a choice between the two positions, it is not clear from the evidence, including his testimony, that Anderson foreclosed the possibility of Sartor becoming a BDD in ADI during this meeting. (R. 28-2, Pl.'s Resp. to Def.'s Statement of Facts ¶ 61.) Further, it is not clear that he actually offered the delivery director position to Sartor during the meeting. (*Id.* ¶ 62.)

On February 4, Plaintiff sent Anderson an e-mail that indicated she was attempting to choose between the BDD and delivery director roles. In this e-mail, she asked for the job description of deliver director. Anderson responded immediately with the job description, but did not correct Plaintiff's apparent misconception that both jobs were still possibilities for her. Instead, he seemed to reinforce her misunderstanding, saying, "[p]lease provide me with a final decision tomorrow." (R. 28-2, Pl.'s Statement of Facts ¶¶ 32-33.)

Plaintiff and Anderson met on the following day, February 5, 2002. During this meeting, Plaintiff told Anderson that she was better suited for the position of BDD. Anderson responded by requesting that she offer additional support for her desire to be a BDD in ADI by providing a more detailed business forecast. (*Id.* ¶¶ 35-36.) Plaintiff e-mailed the requested forecast to Anderson on the evening of February 7. (R. 28-1, Pl.'s Resp. to Def.'s Statement of Facts ¶ 69; R. 36-1, Def.'s Resp. to Pl.'s Statement of Facts ¶ 41.) Anderson concluded that the forecasts did not justify a role as BDD for Sartor in ADI. Therefore, when Plaintiff and Anderson met on February 11, Anderson informed her that there was no role for her at Spherion, and terminated her employment. (R. 28-2, Pl.'s Statement of Facts ¶ 42.)

6

Spherion offered Plaintiff two weeks severance pay if she would sign a release of all claims against Spherion. Plaintiff did not sign the release offered in connection with two weeks severance pay. (R. 22-1, Def.'s Statement of Facts ¶¶ 96-97.) Sartor understood that she would be required to sign a release to receive any severance payment from Spherion. (*Id.* ¶¶ 94-95). On April 20, 2002, Defendant's attorney offered Plaintiff four weeks severance pay in return for a release of all claims against Spherion. (R. 29-1, App. to Pl.'s Statement of Facts, tab 24.) This action ensued.

## ANALYSIS

### I. At-Will Employees

As a preliminary matter, Defendant had argued in its motion for summary judgment that at-will employees may not bring actions under § 1983. Citing recent Seventh Circuit precedent, Defendants have withdrawn this argument, and concede that Sartor is not barred from pursuing her § 1983 claim by virtue of her status as an at-will employee. *Walker v. Abbott Labs.*, 330 F.3d 471, 475 (7th Cir. 2003).

### II. Discrimination Standard

A plaintiff alleging race and sex discrimination may proceed along one of two routes in proving her case: (1) the direct method of proof, or (2) the indirect, burden-shifting method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff Sartor has claimed that enough circumstantial evidence exists in the record to proceed with the direct method of proof. *Desert Palace, Inc. v. Costa*, 123 S. Ct. 2148, 156 L. Ed. 2d. 84 (2003). Defendant points out that Plaintiff has not developed this argument beyond the bald assertion that "if there was ever a circumstantial case supporting a finding of discriminatory motive, this case is

7

it." This Court agrees that Plaintiff has not adequately developed this argument. *See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999) ("Arguments not developed in any meaningful way are waived."). Further, the *Desert Palace* case is easily distinguishable in that the plaintiff endured specific acts of discrimination aside from the particular employment decision that was the subject of the suit. *Id.* at 2152. Plaintiff Sartor has not shown any evidence that would entitle her to the direct method of proof.

Thus, to survive summary judgment on her race and gender discrimination claims, Sartor must prove a prima facie case of discrimination under the burden-shifting method, which requires her to show that (1) she belongs to a protected class, (2) she performed her job according to Spherion's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated more favorably. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001). Establishing a prima facie case creates a presumption of discrimination and shifts the burden to the employer to produce evidence of a legitimate, race and gender-neutral reason for the adverse action. *Id.* at 886. If the employer meets this burden of production, the plaintiff then has the burden to show that the stated nondiscriminatory reason is pretextual. *Id.*

For the purposes of summary judgment, Defendant concedes that Plaintiff has satisfied the first three prongs of the prima facie case. Spherion attacks the fourth prong, however, asserting that no similarly situated employee has been treated more favorably than Plaintiff. To meet her burden with respect to this element, Plaintiff must show that Spherion "treated a similarly situated employee who was not a member of her protected class more favorably" than

Plaintiff. *Wilson v. Ameritech*, No. 01 C 9511, 2003 WL 21077438 at *6 (N.D. Ill. May 12, 2003). Further, Plaintiff must show that the similarly situated employee is "directly comparable to [Plaintiff] in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). In support of its prima facie case, Plaintiff points to Deb Simone and Mike Smith as similarly situated employees who continued employment with Spherion after the business transformation.

### III. Mike Smith

Mike Smith is a white male who was a BDD with the EAI practice group before the business transformation. After the transformation, Smith became BDD with the ADI practice group. The record shows that Smith possessed expertise with WebSphere, a product that Spherion intended to offer in connection with the newly formed ADI practice group. Plaintiff does not contest that Smith had such expertise or that Spherion planned to offer WebSphere. Plaintiff does not claim to have similar experience with WebSphere. Without expertise with this product, Plaintiff has not shown that she is comparable to Smith in "all material respects." Thus, Plaintiff cannot establish that Smith is a similarly situated employee with respect to her race or gender discrimination claims. *Wilson*, 2003 WL 21077438 at *6.

### IV. Deb Simone

Deb Simone is a white female who was BDD of the HIPAA practice group at the time of the business transformation. As a threshold matter, the Court notes that Deb Simone and Plaintiff are both members of the protected class with respect to Plaintiff's gender discrimination action. Because Plaintiff must point to a similarly situated employee *outside* of her protected class, Plaintiff may not use Simone for the purposes of her gender-discrimination claim. Given

9

that Smith is not comparable and Simone is within the protected class, Plaintiff cannot establish the fourth prong of the *McDonnell Douglas* test for her gender discrimination claim. As a result, this Court need not proceed to the questions of non-discriminatory reason or pretext. Plaintiff's claim of gender discrimination under Count II fails as a matter of law.

As for Plaintiff's race discrimination claim, the record shows that Deb Simone had experience selling services offered under the SQM and EAI practice groups while she was BDD of HIPAA. The record also shows that EAI comprises a larger portion of ADI than does IDS. While Plaintiff points out that her BDD agreement did not limit her to selling IDS services, she admits that she essentially sold IDS type services during her time as BDD. Further, Plaintiff does not reveal what services from other practice groups she may have sold during her time as BDD in the IDS practice group.[7] Alternatively, Plaintiff points to her brief experience as "acting director" of the Emerging Technologies group to show that she had experience comparable to Smith and Simone. Although Plaintiff points out that this group later became the EAI group, she fails to explain how this short assignment relates to "qualifications relevant to the position[] sought." *Balderston v. Fairbanks Morse Engine Div. Of Coltec Indus.*, 328 F.3d 309, 322 (7th Cir. 2003) (applying *McDonnell Douglas* test and quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000)). Although Plaintiff has shown evidence that some IDS service lines survived the business transformation, it is undisputed that a significantly larger proportion of the EAI practice group remains as part of ADI. Experience selling EAI service lines,

---

[7]While Plaintiff admits that she essentially sold IDS type services as BDD of ADI, she points to her own deposition testimony that she "always had the understanding that a [BDD] has to sell across platforms." (R. 28-2, Pl.'s Resp. to Def.'s Statement of Facts ¶ 31.) Regardless, Plaintiff has not shown evidence of her experience with any EAI service offerings.

10

therefore, is a qualification relevant to the position of BDD in ADI. Because Plaintiff and Simone have different experience in that Plaintiff has essentially sold IDS service lines while Simone has sold across EAI and SQM service offerings, Simone is not a similarly situated employee.

Plaintiff has failed to produce a similarly situated employee to support her prima facie case of race discrimination. Because she cannot carry this initial burden, the Court need not proceed to the question of pretext. The race discrimination claims of Counts I and II cannot survive summary judgment.

**V. Pretext**

Given that Plaintiff cannot show that similarly situated employees outside of the protected class were treated more favorably than her, the Court is not required to analyze the question of pretext. Nevertheless, the Court notes that even if Smith or Simone were similarly situated to Plaintiff, her claims would still fail on the issue of pretext. To prove pretext, a plaintiff must show that Defendant's reason for the adverse action is "a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). If Spherion's decision to terminate Sartor was imprudent or ill-advised, the Court will not find it to be pretextual. It is not this Court's function to "sit as a kind of super-personnel department weighing the prudence of employment decisions." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1139 (7th Cir. 1997) (internal quotes omitted).

At bottom, the facts show that Spherion terminated Plaintiff because it eliminated the IDS practice group and decided to fill the available BDD positions in the new practice group with employees other than Plaintiff who had experience in the areas upon which the new practice

11

group would focus. Plaintiff has not pointed to evidence that shows this explanation for Spherion's conduct to be dishonest. Plaintiff argues that her lack of opportunity to turn down the position of delivery director is evidence of pretext. This argument is unavailing, as Plaintiff chose to pursue the BDD position knowing it might not be available. Defendant's response to Plaintiff's choice, while possibly the result of a misunderstanding, does not rise to the level of pretext for discrimination. For these reasons, Plaintiff cannot show pretext in Spherion's decision to terminate her.

## VI. State Law Severance Claims

A federal court may, at its discretion, decline to exercise supplemental jurisdiction over state law claims that remain after dismissal of the claim over which the court originally had subject-matter jurisdiction. 28 U.S.C. § 1367(c)(3). *See Esposito v. City of Naperville*, No. 02 C 3686, 2003 WL 22249975, *6 (N.D. Ill. Sept. 30, 2003). Indeed, "[r]elinquishing pendent jurisdiction once federal claims are dismissed is the norm, not the exception." *Donlyn Distrib., Inc. v. BP Amoco Corp.*, No. 01 C 5728, 2003 WL 22144403, *1 (N.D. Ill. Sept. 28, 2003) (citing *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001)). The Court declines to exercise supplemental jurisdiction over Counts III-V of Plaintiff's complaint, which allege breach of contract and causes of action under Illinois statutes. Counts III-V are therefore dismissed without prejudice.

## CONCLUSION

For the reasons discussed above, the Court grants Defendant's motion for summary judgment with regard to Counts I and II. Defendant's motion to strike is denied as moot. Counts III-V are dismissed without prejudice.

Dated: November 20, 2003

ENTERED:

AMY J. ST. EVE
United States District Court Judge